Nov. Term,
1856.

THE BROOK-
VILLE AND
GREENSBURG
TURNPIKE CO.
v.
McCARTY.

## THE BROOKVILLE AND GREENSBURG TURNPIKE COMPANY *v.* McCARTY and Another.

A party is estopped to deny the existence of a corporation at the time he contracted with it as such, if the corporation could constitutionally exist.

But he may show that it has since ceased to exist.

A pleading averring such cessation of corporate powers, must show how they came to a termination.

It cannot be shown, in defense of the suit of a corporation, that it has forfeited its corporate rights by misuser or non-user.

Advantage can be taken of such forfeiture only on process on behalf of the State, instituted directly against the corporation for the purpose of avoiding its charter.

Individuals cannot avail themselves of it in collateral suits, until it be judicially declared.

A plea or answer to a suit of a corporation, showing facts upon which, in a direct proceeding, its corporate powers might be declared at an end, is, therefore, as a general rule, bad.

If by the charter or by contract, a condition precedent exists to the right to exercise corporate powers, that condition must be performed or waived by the opposite party before such right may be exercised.

A bill of exceptions signed and filed by leave of the court below, at a term subsequent to that at which the cause was tried, without objection by counsel for the adverse party, who signed an agreement as to what should be embraced in it, will not be rejected by this Court, especially after submission upon the record as made up, without any motion to strike out the bill.

APPEAL from the *Franklin* Court of Common Pleas. PERKINS, J.—On the 15th of *January*, 1849, was approved "an act to incorporate the *Greensburg and Brookville Turnpike Company,*" the first section of which

provided, "That *Hiram Carmichael*," and certain others named, "and their successors," &c., "be, and the same are hereby created a body corporate and politic, by the name," &c., "with full powers," &c. The second section enacted, among other things, that said directors might open books, &c., for subscriptions to the capital stock, &c.

By an act of *February* 4, 1851, the corporation was recognized as existing, and directors were appointed by the legislature.

Books for stock subscriptions were opened and, on the 17th day of *June*, 1851, the defendants in this suit subscribed five shares of 50 dollars each, making 250 dollars, to recover which this suit was instituted.

The defendants answered denying the existence of the corporation generally, and, also, setting up other grounds of defense.

The plaintiff, to the denial of the corporate existence, replied that the defendants were estopped by their contract to deny such existence.

The defendants demurred to the reply, and the Court sustained the demurrer. Trial of other issues. Judgment for the defendants.

Touching corporations and contracts with them, three points seem to be established by the decisions of this Court.

1. That a person is estopped (if the corporation could exist constitutionally) to deny the existence of a corporation at the time he contracted with it as such. *Judah* v. *The American Live Stock Co.*, 4 Ind. R. 333, and cases cited.—*Ryan* v. *Vanlandingham*, 7 Ind. R. 416.

2. That he may show that it has subsequently ceased to be a corporation. *Id.*

3. That a pleading averring such cessation of corporate powers, must show how they came to a termination. 2 Blackf. 367.—*The State* v. *Vincennes University*, 5 Ind. R. 77.

The paragraph in the answer now under consideration, therefore, is bad so far as it denies the existence of

Nov. Term,
1856.

THE BROOK-
VILLE AND
GREENSBURG
TURNPIKE CO.
v.
McCARTY.

this company when the subscription of stock was made; and bad so far as it denies its subsequent existence, for not showing how its corporate powers came to an end.

Say Angell and Ames on Corp. p. 507, second ed., "It cannot be shown in defense to the suit of a corporation · · · · · · that the plaintiffs have forfeited their corporate rights by misuser or non-user. Advantage can be taken of such forfeiture only on process on behalf of the State, instituted directly against the corporation for the purpose of avoiding the charter or act of incorporation, and individuals cannot avail themselves of it in collateral suits until it be judicially declared" (1). A plea or answer, therefore, as a general rule, to the suit of a corporation, showing facts upon which, in a direct proceeding, the corporate powers might be declared at an end, is not sufficient. It must show that they have ceased. 2 Blackf. and 5 Ind. R., *supra.*

The denial of the corporate existence in this case, we discover from the foregoing statement of the law, should more properly, perhaps, have been met by a demurrer.

4. But fourthly, the law is settled that if by the charter, or by contract, a condition precedent exists to the right to exercise powers or perform acts by the corporation, that condition must be performed or waived by the opposite party before such right may be exercised.

It is insisted that such conditions are shown by the evidence given on the trial of issues made, to have existed in this case—that a certain amount of stock was to be procured, officers elected, orders made, and notices given, before suits could be brought—which were not performed. At the same time, it is claimed that if the Court should regard the evidence as showing a performance of all conditions precedent by the plaintiffs to be performed, or a waiver of them by the defendants, then the Court should reject the evidence as not before it, because the bill of exceptions is not properly a part of the record.

Should this turn out to be the fact, we shall, never-

theless, be compelled to reverse the case upon the erroneous ruling of the Court below on the demurrer; as we shall be driven to presume that that ruling injured the plaintiffs, the failing party, in this, that it imposed upon that party the necessity of proving what they were not bound to, and, perhaps, could not, prove. This presents an entirely different case from that of erroneously sustaining a demurrer to a plea which, if held valid, the pleader would have to prove, and the facts set up in which, if existing, might be proved under other pleas held good. See more fully on this point, *Elliott* v. *Wright*, 7 Ind. R. 374. But, can we reject the bill of exceptions? It was signed and placed upon file by leave of the Court below, at a term subsequent to that at which the cause was tried, but without objection from the defendants, who were present by one who acted as their attorney in the cause during its progress, and on the filing of the bill of exceptions, and who signed an agreement as to what should be inserted in it. Further, the cause was submitted to this Court on the record as made up, no motion, which the opposite party might have resisted, having been made to strike from it the bill of exceptions in question. See *Young* v. *The State Bank*, 4 Ind. R. 301. Under these circumstances, we think, the objection is raised too late; but in the state of the case as presented by the record, it is in vain for us to look at the evidence.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for further proceedings, with leave to both parties to amend and make up issues anew.

*G. Holland* and *J. D. Howland*, for the appellants.

*W. M. McCarty*, for the appellees.